2024R00332/DAF/JMR

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 24-469 (KMW) |
| | : | |
| v. | : | 18 U.S.C. § 1349 |
| | : | |
| LISA SMITH | : | |

# I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment

and any objection based on venue, the United States Attorney for the District of

New Jersey charges:

1.     At all times relevant to this Information:

a.     Lender-1 was a financial institution that participated as a

lender in the Paycheck Protection Program ("PPP"), as described herein.

Lender-1 was a "financial institution" within the meaning of Title 18, United

States Code, Section 20.

b.     The defendant, LISA SMITH, was a resident of North

Carolina.  Defendant LISA SMITH owned or controlled Delaware companies 242

Dreamer LLC and Dash My Hair LLC.

**The Paycheck Protection Program ("PPP")**

c.     The Coronavirus Aid, Relief, and Economic Security ("CARES")

Act was a federal law enacted in or about March 2020 and was designed to provide

emergency financial assistance to millions of Americans suffering economic effects

caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act

was the authorization of billions of dollars in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

       d.     To obtain a PPP loan, a business had to submit a PPP loan application signed by an authorized representative of the business.  The applicant of a PPP loan was required to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the applicant had to state, among other things, its average monthly payroll expenses and number of employees.  These figures were used to determine whether the business was eligible for a PPP loan and to calculate the amount of money the business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan had to provide documentation showing their payroll expenses, such as tax forms and bank statements.

       e.     A PPP loan application had to be processed by a participating financial institution (the lender).  If the PPP loan application was approved, the lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

       f.     PPP loan proceeds could only be used by the business for certain permissible expenses, including payroll costs, interest on mortgages, rent, and utilities.  The PPP allowed the interest and principal on the PPP loan to be entirely

2

forgiven if the business used the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain amount of the PPP loan proceeds on payroll expenses.

g.      To obtain loan forgiveness of a loan in the amount of $150,000 or less, a borrower was required to submit a PPP Loan Forgiveness Application Form 3508S.  Form 3508S required the borrower to report the amount of loan proceeds spent on payroll costs.  It also required the borrower to certify that the information provided in the forgiveness application was true and correct.

## The Conspiracy

2.      From in or about January 2021 through in or about December 2021, in Camden County in the District of New Jersey, Mecklenburg County in the Western District of North Carolina, Montgomery County in the Eastern District of Pennsylvania, and elsewhere, the defendant,

LISA SMITH,

did knowingly and intentionally conspire and agree with others, known and unknown, to execute and attempt to execute a scheme and artifice to defraud a financial institution, Lender-1, and to obtain moneys, funds, credits, assets, securities, and other property owned by and, under the custody and control of, a financial institution, Lender-1, by means of false and fraudulent pretenses, representations, and promises, contrary to Title 18, United States Code, Section 1344.

3

## Object of the Conspiracy

3.      The object of the conspiracy was for defendant LISA SMITH and her co-conspirators to financially enrich themselves by obtaining PPP loans that were intended for small businesses distressed by the COVID-19 pandemic through the submission of fraudulent loan applications, for companies with little or no operations ("Non-Operating Companies"), that included false statements about the Non-Operating Companies' number of employees and payroll expenses, and by providing false documentation to Lender-1.

## Manner and Means of the Conspiracy

4.      It was part of the conspiracy that defendant LISA SMITH and others learned that Lender-1 was accepting applications for PPP loans.  Lender-1 required that applicants first open a business bank account with Lender-1.

5.      It was further part of the conspiracy that defendant LISA SMITH agreed with others to submit PPP loan applications to Lender-1 on behalf of her Non-Operating Companies 242 Dreamer LLC and Dash My Hair LLC.  These PPP loan applications contained materially false representations, including that 242 Dreamer LLC and Dash My Hair LLC had significantly more employees and higher payroll expenses than they actually had.

6.      It was further part of the conspiracy that defendant LISA SMITH submitted to Lender-1 as part of the PPP loan applications for 242 Dreamer LLC and Dash My Hair LLC fraudulent IRS Forms 941 (Employer's Quarterly Federal

Tax Return) that falsely represented that they had employees and payroll expenses in the period preceding the PPP loan applications.

7.     It was further part of the conspiracy that defendant LISA SMITH created fraudulent bank statements in the names of 242 Dreamer LLC and Dash My Hair LLC.  These fraudulent bank statements were submitted to Lender-1 as part of the PPP loan applications.

8.     It was further part of the conspiracy that, based on the fraudulent PPP loan applications, defendant LISA SMITH received PPP loans from Lender-1 for her Non-Operating Companies 242 Dreamer LLC and Dash My Hair LLC.

9.     It was further part of the conspiracy that defendant LISA SMITH prepared fraudulent PPP loan applications to Lender-1 for other individuals who owned or controlled Non-Operating Companies (the "Recruits").  The applications contained materially false statements whose purpose was to induce Lender-1 to approve PPP loans that otherwise would not have been approved.  Those false statements included the representations that the Non-Operating Companies had significantly higher employees and payroll expenses than they actually had.

10.     It was further part of the conspiracy that the PPP applications prepared by defendant LISA SMITH and submitted to Lender-1 included materially false documentation to support the fraudulent PPP loan applications.  That false documentation often included fraudulent bank statements and fraudulent tax documents purporting to substantiate the applications' claims that the businesses

had a substantial number of employees with significant average monthly payroll. The false documentation sometimes also included backdated operating agreements.

11.    It was further part of the conspiracy that based on the materially false statements and documentation in the PPP applications, Lender-1 approved more than 35 PPP loans and disbursed almost $5,000,000 to the Non-Operating Companies.

12.    It was further part of the conspiracy that defendant LISA SMITH received a portion of the PPP loan proceeds that Lender-1 disbursed to the Non-Operating Companies.

13.    It was further part of the conspiracy that defendant LISA SMITH prepared applications for PPP forgiveness to Lender-1 in the name of some Non-Operating Companies.  The applications contained materially false statements whose purpose was to induce Lender-1 and the SBA to forgive PPP loans that otherwise would not qualify for forgiveness.  Those false statements included the representations that the Non-Operating Companies had significantly more employees than they actually had and that they spent a higher percentage of the PPP loan proceeds on permissible expenses such as payroll than they actually did.

All in violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATION

1.    As a result of committing the offense charged in Count One of this Information, defendant LISA SMITH shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2), all property, real or personal, constituting or derived from proceeds traceable to the offense charged in this Information.

## SUBSTITUTE ASSETS PROVISION

If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), to forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

PHILIP R. SELLINGER
United States Attorney

7

CASE NUMBER: _____

# United States District Court
# District of New Jersey

## UNITED STATES OF AMERICA

**v.**

## LISA SMITH

# INFORMATION FOR

## 18 U.S.C. § 1349

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

DANIEL A. FRIEDMAN
JASON M. RICHARDSON
ASSISTANT U.S. ATTORNEYS
CAMDEN, NEW JERSEY
(856) 757-5026